NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2022
Decided August 18,2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-2574

| | |
|---|---|
| ALYSSA ESKER, Administrator of the ESTATE OF EDWIN J. ESKER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-00691-SPM |
| CHRISTOPER LUTZ, *Defendant-Appellee*. | Stephen P. McGlynn, *Judge*. |

**O R D E R**

In July 2017 Sergeant Christopher Lutz shot and killed Edwin Esker while responding to a domestic disturbance call in Monroe County, Illinois. When Sergeant Lutz and his partner arrived at the Esker home, they found Edwin walking toward them carrying a running chainsaw, which he declined to drop upon being instructed to do so. When Edwin got within 15 feet—chainsaw still in hand—Sergeant Lutz fired three shots in rapid succession, killing Edwin.

Alyssa Esker, Edwin's daughter and the administrator of his estate, later invoked 42 U.S.C. § 1983 and brought this lawsuit against Sergeant Lutz, claiming that his use of excessive force violated Edwin's Fourth Amendment rights. The district court entered summary judgment in Sergeant Lutz's favor, concluding both that the use of deadly force was not excessive in these circumstances and that, in any event, he was entitled to qualified immunity. We agree and affirm.

## I

On July 5, 2017 Linda Esker called the non-emergency line for the Monroe County Sheriff's Department requesting help dealing with her ex-husband, Edwin, who lived on the same property in an RV. Over the course of about 13 minutes, Linda stated that Edwin was drunk, threatening to kill her, and acting erratically—including, about seven minutes into the call, by picking up a chainsaw and walking down the driveway.

While Linda stayed on the line with the dispatcher, Sergeant Christopher Lutz and Deputy Sheriff Steve Meister arrived at the Esker property in separate cars. To reach Linda's house, the officers had to drive down a long, rough driveway with overgrown vegetation obscuring their view on both sides. Sergeant Lutz stopped his car at a sharp left turn in the driveway, saw Edwin, and got out of his car to talk to him. At that point, Sergeant Lutz testified, Edwin was maybe 50 to 75 feet away holding a running chainsaw. Edwin kept moving toward the officers despite Sergeant Lutz's "repeated, loud verbal commands to drop the chainsaw" and get on the ground. When Edwin was about 15 feet away—showing no signs of slowing or dropping the chainsaw, despite continued warnings— Sergeant Lutz fired three shots in quick succession. Sergeant Lutz hit Edwin once in the jaw and twice in the chest. Edwin died from his injuries before paramedics arrived.

## II

All agree that the overarching question in Fourth Amendment excessive force claims is whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (cleaned up); see also *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985) (explaining that if a suspect "threatens [an] officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given"); *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) ("When an officer reasonably believes an assailant's actions place him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of

deadly force.") (cleaned up). Based on our review of the summary judgment record, the propriety of the use of force here—and, in turn, the viability of the estate's § 1983 claim—turns on one fact: the distance between Edwin and his running chainsaw and Sergeant Lutz when he opened fire.

Both Sergeant Lutz and Deputy Meister testified that Edwin was about 15 feet away when Sergeant Lutz took his first shot. Illinois State Police crime scene investigator W. Grant Hentze more generally testified that the distance between Sergeant Lutz's police vehicle and Edwin's body was less than 50 feet. At that close of a distance, confronted with a non-compliant and intoxicated individual advancing toward him with a running chainsaw, we cannot say it was objectively unreasonable for Sergeant Lutz to use deadly force to protect both himself and Deputy Meister. See *Horton*, 883 F.3d at 949; compare *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 612–13 (2015) (concluding that the officers' use of potentially deadly force was reasonable where knife-wielding suspect "kept coming at the officers until she was only a few feet away" from a cornered officer) (cleaned up).

To be sure, summary judgment would not be appropriate if Esker had come forward with evidence that Edwin was substantially further away from the officers when Sergeant Lutz fired his first shot—so much further away that it would have been objectively unreasonable for him to use deadly force. See, *e.g.*, *Horton*, 883 F.3d at 949 (explaining that the operative question is whether the use of deadly force is justified by the totality of the circumstances and emphasizing that, as circumstances change and the danger officers face subsides, an officer's authorization to use deadly force may dissipate).

But the estate did not do so. Linda Esker and Linda and Edwin's son, Jacob, each tried to approximate the distance in deposition testimony, but their competing estimates fail to create a material dispute of fact. Neither Linda nor Jacob saw the events unfold firsthand, but each measured from what they understood to be Sergeant Lutz's position at the corner of the driveway to the pool of blood left where Edwin fell. Linda testified that this distance was about 25 feet, while Jacob put it at "50 feet or something." Even taking these conflicting measurements in the light most favorable to the estate, Jacob's 50-foot estimate is fully consistent with the crime scene investigator's own approximation, and still puts Edwin dangerously close to the officers—especially in light of Sergeant Lutz's testimony that Edwin covered most of the ground that was initially between them in the span of just seconds.

The estate also produced an expert report from mechanical engineer Adam Crepin, who used latitudinal and longitudinal coordinates from the crime scene investigator's GPS device to estimate the distance between Edwin's body and Sergeant Lutz's vehicle. Based on this GPS data, the expert estimated that Edwin and Sergeant Lutz were about 93 feet apart.

If that had been the sum of the expert's testimony, the estate may have created a genuine issue for trial. But the expert emphasized in his report that due to the imprecision of the recorded GPS coordinates and inherent measurement errors, the actual distance could have been anywhere between 13 and 171 feet. There is a world of difference between the circumstances confronting Sergeant Lutz if Edwin was 171 as opposed to just 13 feet away, and the burden was on Edwin's estate (as the plaintiff) to narrow that range. Without any record evidence establishing which of these figures is more likely, we cannot say that the 13 to 171 feet range is enough for the estate's § 1983 claim to survive summary judgment.

The estate also raises other facts that, in its view, demonstrate that Sergeant Lutz's actions were objectively unreasonable, but none of these require resolution by a jury. Esker first points to the forensic pathologist's testimony addressing hypothetical scenarios, based on Edwin's injuries, in which Edwin posed no threat to Sergeant Lutz after the first shot was fired—rendering the second and third shots excessive and objectively unreasonable. But, by his own admission, the forensic pathologist could not opine to a reasonable degree of certainty that any of these scenarios were accurate. That leaves us with no expert opinion that the physical evidence undermines the officers' testimony that Edwin continued to advance toward them even after Sergeant Lutz fired the first shot.

Esker also makes the unsupported accusation, based on speculative critiques of the foliage visible in the crime scene photographs, that the officers and crime scene investigator manipulated the scene—including by moving Sergeant Lutz's car closer to Edwin's body after the shooting. But there is no genuine factual question there and, in any event, Esker does not explain how such manipulation would bear on Sergeant Lutz's and Deputy Meister's firsthand testimony that Edwin was 15 feet away holding the running chainsaw when he was shot. Nor does it undermine Linda and Jacob Esker's estimates that Sergeant Lutz and Edwin were 25 feet or 50 feet apart—in either scenario, a distance close enough to warrant the use of deadly force.

Even if record evidence supported the estate's contention that Sergeant Lutz used excessive force, however, summary judgment was also proper based on qualified

immunity. Determining that there was a constitutional violation is not the end of the § 1983 analysis. A plaintiff must also establish that the constitutional right was clearly established at the time of the encounter, see *Sheehan*, 575 U.S. at 611, or that the violation was so egregious that "no reasonable officer could have thought he was acting lawfully," see *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018).

The estate did not—and, based on our review, could not—point the district court to a decision establishing that the use of deadly force on these facts (close proximity and continuing to advance, a running chainsaw, and a failure to obey oral commands) was a violation of the suspect's constitutional rights. Nor is the conduct so obviously egregious as to make qualified immunity inappropriate. To the contrary, cases involving similar circumstances, where an armed suspect did not surrender and law enforcement fired multiple shots in quick succession, establish that Sergeant Lutz was permitted not only to shoot once, but to keep shooting until "the threat [had] ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

For these reasons, we AFFIRM.